FRANK SPOLIDORO *vs.* UNITED STATES RUBBER COMPANY.

DECEMBER 20, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a petition which was filed in the department of labor, by a former employee of the respondent, for compensation under the workmen's compensation act, general laws 1938, chapter 300, by reason of an injury which he alleged that he had sustained in the course of his employment by the respondent. After a hearing in that department, compensation was awarded to him. The respondent appealed to the superior court and the cause was there heard, the result being a decision and decree denying petitioner any compensation.

The cause is now before us on the petitioner's appeal from that decree. His sole contention to us is that there was no legal evidence to sustain the findings of fact made by the trial justice. The controlling issue is whether the petitioner, on August 24, 1945, sustained a personal injury by accident arising out of and in the course of his employment. It was undisputed that he was then working as an employee of the respondent and had been so working for over four years.

It appeared from the evidence in the superior court that on that day he was engaged in his usual work of packing

signal corps bags into wooden boxes and nailing covers on
the boxes; that when this operation was completed as to
any box, which would then weigh about 75 pounds, he would
lean over it, with a claw hammer in his hand, take hold of
the farther end of the box with the claw of the hammer and
pull it toward him until the box was upended, for stencilling
and transfer to the shipping room.

In the whole record before us the only direct testimony
as to an accident to the petitioner came from himself. In
direct examination he testified as follows: "Q. Now, on
this 24th day of August will you tell the Court just what
happened to you? A. Well, I had just finished nailing the
cases, putting covers on all the cases, and I was pulling them
up. As I stooped to pull one up I kind of lost balance com-
ing back, pulling it up, and I felt a sharp pain in my back.
I went bending backwards."

In cross-examination, after he had demonstrated, at coun-
sel's request, the manner in which he pulled the boxes up
on end, we find the following questions and answers: "Q.
So that nothing struck you or anything like that. It was
just while you were pulling that up you felt something in
your back? A. I felt a great pain, sharp pain. Q. You felt
a sharp pain in your back. And that was while you were
bending over, the way you showed us, with a claw hammer,
and bringing that up; is that right? A. Yes."

The petitioner further testified, in direct examination,
that as the pain in his back got worse he, after resting for
nearly half an hour, notified his foreman and another man,
who were at a desk, that he had hurt himself on the job and
could not continue to work. When asked the question: "Did
you tell them just how you hurt yourself, what happened
to you?", his testimony was: "I told them I hurt my back."
He further testified that they notified the girl, who was the
clerk in that department, and instructed her to make out
"a hospital slip" for him to go down to the factory hospital
and she did so; that he went down to the hospital and was
notified by the clerk there that the company physician, who

was Dr. Palmer, had left and she would have to send the petitioner to the physician's office.

The petitioner further testified that the nurse then arranged to have him taken in the factory car to Dr. Palmer's office; that the petitioner told the doctor that he had a pain in the back whereupon, after examination, he shaved his back and applied wide pieces of tape, tightly. The petitioner further testified that according to instructions he reported to Dr. Palmer on the next Monday morning at the company hospital; that the doctor examined him again and added more tape and he returned to work and continued to work; that he saw Dr. Palmer and was treated by him in the same manner on Tuesday and Wednesday mornings, and on Thursday morning the doctor removed the tape.

The foreman and the assistant foreman, the nurse and the respondent's physician all positively testified that the petitioner, in making his complaints to them, never mentioned an accident. He told each of them that he felt a sharp pain in his lower back, while bending in the course of his work.

The record of the factory hospital relating to the petitioner, which was kept by the nurse and consisted of two cards, was introduced in evidence. Among other things the cards show the following entries which the nurse testified that she made from information received from the petitioner: "Claims he felt pain yesterday 8/23 & had sudden pain today when he bent forward to lift case . . . . Said back had bothered him for some time previously." The petitioner denied making any statement as to his condition on the previous day, or at any previous time.

The evidence is clear that the petitioner worked at his regular employment for an entire working week after August 24, 1945, and that he reported for work at his regular employment on the first work day of the following week, at which time he was discharged, in the presence of a representative of his labor union, because of falsification of his production records. He consulted his own doctor, for the

first time, a few days after his discharge and he later instituted the present proceeding for workmen's compensation.

Five doctors testified at the hearing in the superior court, three for the petitioner and two for the respondent, each of whom had either examined or treated him. The history which each received from him was substantially the same, namely, that, while at work pulling up a case with a claw hammer, he felt a sharp pain in his lower back. Here again we fail to find any reference by him to an accident, in the legal sense of that term.

There was considerable medical evidence that the petitioner was suffering from advanced arthritis in the lumbar region, and one physician, an orthopedic specialist, testified that, as shown by X-ray photographs, all the petitioner's complaints of pain could be associated with the arthritic changes in his lumbar vertebrae; that his ability to work was limited only by such arthritic condition; and that in his opinion the petitioner could, at the time of the hearing, do the same work as that which he was doing at the time of the alleged accident.

The trial justice made two findings of fact on the conflicting evidence before him. The first one was that the petitioner had failed to prove, by a fair preponderance of the evidence, that he had sustained an injury by an accident arising out of and in the course of his employment by the respondent. The second was that, if he had sustained such an injury, he had not had, as a result of it, any compensable incapacity. The petitioner contends that there was no legal evidence to support either of these findings.

If there was legal evidence in support of the first finding by the trial justice, that there was no accident to the petitioner, then his second finding, that the petitioner suffered no compensable incapacity, need not be considered by us. The burden was on the petitioner to prove his case by credible evidence of probative force. The credibility of witnesses and the weight to be given to legal evidence are matters of fact and not of law. *Parmentier* v. *Moore Fabric Co.,*

71 R. I. 369. Furthermore, a conclusion by the trial justice in a workmen's compensation case, by way of reasonable inference from legal evidence, is a finding of fact. *Recchia* v. *Walsh-Kaiser Co., Inc.*, 71 R. I. 208. According to the workmen's compensation act, findings of fact by a trial justice supported by evidence are conclusive in this court.

It is clear from a careful examination and consideration of the evidence in this cause that it is conflicting as to whether the petitioner received "a personal injury by accident arising out of and in the course of his employment", within the meaning of this language quoted from G. L. 1938, chap. 300, art. II, §1, as construed by this court. *Fuller Co.* v. *Schacke*, 71 R. I. 322, and cases cited.

The fact that the respondent produced little or no *direct* evidence in conflict with the petitioner's testimony as to the happening of an alleged accident to him, arising out of and in the course of his employment by the respondent, did not require that his testimony on that subject be accepted as true and treated as undisputed evidence. *Parmentier* v. *Moore Fabric Co., supra.* It was the duty of the trial justice to consider all of the pertinent evidence introduced, whether direct or by way of reasonable inference, in determining whether the petitioner had received a personal injury by accident arising out of and in the course of his employment by the respondent, in accordance with the language of the act, as construed in opinions of this court.

There is no evidence in the record before us that at the time when he claims to have had such an accident the petitioner was subjected to any extraordinary or unusual condition while working—*Barker* v. *Narragansett Racing Ass'n.*, 65 R. I. 489—or that he sustained a physical injury by reason of overexertion in overcoming some unusual difficulty in his work. *Maderos* v. *McLeod*, 65 R. I. 177. On the contrary, except for the petitioner's statement in direct examination hereinbefore quoted, the evidence was clear that the pain in his back occurred while he was doing his regular work in his usual manner, under ordinary conditions, and

without the intervention of any unlooked-for mishap or untoward event that was not expected or designed. There was no evidence that he was subjected to any unusual strain or extraordinary condition.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Fred Brosco,* for petitioner.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for respondent.